UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY DEVINE, | |
| Plaintiff, | Case No. 1:18-cv-05038 |
| v. | Judge John Robert Blakey |
| NATIONAL RAILROAD PASSENGER CORPORATION, A Corporation, AMTRAK, A Corporation, CHICAGO UNION STATION COMPANY, A Corporation, TOTAL FACILITIES MAINTENANCE, INC., A Corporation, and SCRUB, INC., A Corporation, | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Devine sues Defendants National Railroad Passenger Corporation (Amtrak), Chicago Union Station Company (CUSCo), Total Facilities Maintenance, Inc. (TFM), and Scrub, Inc. for negligence after tripping on a mat while exiting Chicago's Union Station. Defendants now move for summary judgment. [48]; [52]; [62]. For the reasons explained below, this Court grants in part and denies in part Amtrak and CUSCo's motion, [48], and denies TFM's and Scrub's motions, [52] [62].

I.  Background

    A.  The Fall

Devine serves as a legal assistant at a law firm in downtown Chicago. [80-1] at 3. For that reason, she regularly commutes downtown for work. [80-1] at 4–5. On

1

the morning of September 12, 2016, Devine walked through Union Station toward the Adams Street/River exit (Adams Street exit) on her way to work. [50] ¶ 1. Devine used the Adams Street exit every day. *Id.* ¶ 9. Although bustling during the morning rush hour, Devine did not consider the area unusually busy that day. [80-1] at 5. Furthermore, she experienced no issues with the lighting, and it was not raining. *Id.*

The Adams Street exit features two escalators and a staircase leading to a 15-to-20-foot mat, adjacent to a set of five doors exiting the Station. [50] ¶ 8. As commuters moved through the area, a portion of the mat became caught in the doorway and slightly cinched as a result. *Id.* ¶¶ 16–17. From 8:15 a.m. to 8:24 a.m., 321 people used the far-right door of the exit without issue; all commuters avoided the mat's raised portion successfully. *Id.* ¶¶ 15–16. At 8:24 a.m., the mat became more significantly raised, yet 26 more commuters safely passed through the far-right door, avoiding the obstruction. *Id.* ¶ 17.

Devine approached the set of doors and chose the far-right door—her everyday exit. *Id.* ¶ 9. She experienced no prior issues walking across the mat at this door, nor did she ever notice problems with the mat itself. [64] ¶ 3. As she continued toward the exit, a gentleman ahead of Devine stepped over the mat and exited the door, holding it open behind him. [50] ¶ 21. As they walked toward the exit, the gentleman remained two to three feet in front of Devine; nothing else obstructed her view. [80-1] at 5.

At 8:26 a.m., Devine tripped on the raised mat and fell to the ground with her arm extended; she did not see the mat before falling. [50] ¶¶ 18, 22–23. At

2

approximately 8:26 a.m., Amtrak Police Officer Christopher Schabert responded to Devine's fall. [50] ¶ 24; [50-9] at 9. At the time, Devine reported pain in both knees as well as numbness and lack of strength in her right arm. *Id.* Schabert testified that he has heard of no previous incidents from a cinched mat at the Adams Street exit. [50-9] at 14.

Devine testified that her fall resulted in an injured rotator cuff requiring surgery. [80-1] at 11, 24. She missed a day and a half of work immediately following her injury, then remained on leave from December 9, 2016 until March 3, 2017 for surgery and rehab. *Id.* at 4. Devine testified that she has not regained her full range of motion and possesses limited ability to pull files and type for extended periods of time. *Id.* at 12–13.

### B. Amtrak and CUSCo

The United States constitutes the majority owner of Amtrak. [50] ¶ 2.[1] CUSCo, a wholly owned subsidiary of Amtrak, holds legal title to Chicago Union Station. *Id.* ¶ 3; [87] ¶ 39. Non-party CBRE, Inc. served as CUSCo's property manager and facilitated contracts for maintenance and custodial services in Union Station. [50] ¶ 4.

### C. Scrub and TFM

Scrub and TFM provided custodial services during the day and evening at Union Station. [50] ¶¶ 5–6; [50-5] at 1, 7. Pursuant to a service agreement

---

[1] Because the United States constitutes a majority owner of Amtrak, this Court retains original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1349. This Court also maintains supplemental jurisdiction over the remaining Defendants pursuant to 28 U.S.C. § 1367.

(Agreement) with CUSCo's property manager, CBRE, Inc., TFM and Scrub's duties broadly included responsibility for "providing all janitorial and appearance care services of [Union Station], except those activities and areas assigned to AMTRAK/CUSCO staff." [50-5] at 16. Scrub and TFM also agreed to "take all reasonable and prudent precautions to prevent any damage to property, personal injury, or death to persons [from any] equipment, tools, scaffolding, materials, or other property or from acts of" Scrub and TFM. *Id.* at 3. The Agreement further required Scrub and TFM to use "special care and planning" to keep the area "clean and maintained at all times," and to maintain "development of cleaning quality standards, methods, procedures, schedules and practices . . . to ensure safe, consistent work practices and quality." *Id.* at 16.

Scrub employees directly supervised all TFM janitors. [53] ¶ 4. Welbon Morris served as the Scrub supervisor at the time Devine fell, [80-2] at 4, and Yuliana Cordoba and Felix Juarez, both TFM employees, were assigned to the Adams Street exit that day, [79] ¶ 43.

Juarez stated that he and his co-worker typically inspect the exit area around 6:20 a.m., then again around 9:20 a.m., after the rush hour crowd subsides. [50-10] at 6. Juarez testified that, during rush hour, the exit "is impossible [to inspect], because it is packed with people." *Id.* Scrub supervisor Morris confirmed that if he wanted TFM employees to check the area more often, he could have ordered them to do so; TFM itself had no discretion on where to assign its workers. [53] ¶ 12. Although Morris never gave any specific instructions about the mats, former

4

assistant Scrub manager Joel Delgado testified that TFM janitors possessed no authority to lift or look underneath them. *Id.* ¶ 11; [76-3] at 25. Juarez also testified that if something was wrong with a mat, TFM "isn't supposed fix it," and that rather, TFM employees would call Scrub for direction about what to do. [50-10] at 12. Juarez, a TFM janitor at Union Station for 16 years at the time of incident, testified he never heard of the mat in question move or cinch. *Id.* at 3, 8.

Scrub similarly maintains it never knew of prior issues with the Adams Street exit mat cinching. [64] ¶ 6. Morris testified, for instance, that he could not recall any previous cinching at the Adams Street exit during his 26-year tenure working at Union Station. *Id.* at 3, 22. Delgado recalled that other mats previously cinched on occasion, but similarly testified there "was never an issue" with cinching at the Adams Street exit. [50-7] at 12. Moreover, Delgado testified that although Scrub maintained responsibility for cleaning mats, Scrub employees did not possess the authority to decide whether to tape the Adams Street mat down. [76-3] at 25. Delgado further testified that CBRE directed Scrub as to which mats to tape. *Id.* at 13.

Finally, Morris also testified that he did not need permission from CBRE to straighten out a mat. [50-11] at 14. And Delgado further testified that anyone "on the floor at any time," including Scrub and TFM employees, bore responsibility to fix any "potential hazard," such as fixing a buckling mat. [50-7] at 22.

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact

5

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; instead "there must be evidence on which the jury could reasonably find" for the non-moving party." *Anderson*, 477 U.S. at 252.

### III. Analysis

Devine alleges negligence under both a premises liability theory and ordinary negligence against Amtrak (Count I) and CUSCo (Count II), and ordinary negligence against TFM (Count III) and Scrub (Count IV). [20] at 1–7.

6

Under Illinois law, a plaintiff claiming ordinary negligence must prove the following three elements: (1) the defendant owed a duty of care; (2) the defendant breached that duty; and (3) the plaintiff experienced injuries as a proximate cause of that breach. *Doe v. Coe*, 135 N.E.3d 1, 15 (Ill. 2019).[2]

To establish premises liability, plaintiff must prove an additional three elements: (1) a condition on the property presented an unreasonable risk of harm; (2) the defendant knew or reasonably should have known of the condition and the risk; and (3) the defendant could reasonably have expected that people on the property would not realize, would not discover, or would fail to protect themselves from the danger. *Garcia v. Goetz*, 121 N.E.3d 950, 958 (Ill. App. Ct. 2018); *Rosales v. Menard, Inc.*, No. 17 C 1131, 2018 WL 2299232, at *3 (N.D. Ill. May 21, 2018).

### A.   Amtrak and CUSCo

In Counts I and II, Devine alleges that Defendants Amtrak and CUSCo breached their duty of care to keep Union Station safe under both premises liability and ordinary negligence theories. [20] at 1–5. Courts applying Illinois law recognize "the independence" of these two theories and have allowed plaintiffs to proceed under either or both. *Donald v. Target Corp.*, No. 15 C 5714, 2016 WL 397377, at *1 (N.D. Ill. Feb. 2, 2016) (collecting cases). Amtrak and CUSCo jointly move for summary judgment on both theories.

---

[2] The parties agree that Illinois law applies to Devine's claims. [49] at 3; [78] at 2; [54] at 2; [62] at 9.

7

### 1. Premises Liability

Under Illinois law, landowners owe business invitees a duty of care to keep premises reasonably safe. *McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019). Amtrak and CUSCo move for summary judgment on Devine's premises liability theory arguing: (1) they could not have breached any duty of care because they lacked actual or constructive knowledge of the mat's condition; and (2) the mat cinching constituted an open and obvious condition, and thus they owed no duty of care to protect against it. [86] at 5–6, 9–12. This Court addresses each argument below.

#### a. Actual Knowledge

Under Illinois law, no premises liability can attach if the owner lacks actual or constructive knowledge of the alleged dangerous condition. *Barrios v. Fashion Gallery, Inc.*, 255 F. Supp. 3d 728, 731 (N.D. Ill. 2017); *Olivarius v. Tharaldson Prop. Mgmt., Inc.*, 695 F. Supp. 2d 824, 832 (N.D. Ill. 2010).

Actual knowledge only exists "where there is evidence that the defendant or its employee had been notified of the dangerous condition" prior to the plaintiff's fall. *Haslett v. United Skates of Am., Inc.*, 136 N.E.3d 172, 185 (Ill. App. Ct. 2019); *see also Puhr v. PQ Corp.*, 295 F. Supp. 3d 891, 896 (N.D. Ill. 2018) (distinguishing knowledge of potential future risk from an immediate hazard). Here, no evidence exists to indicate that any employees of Amtrak or CUSCo knew the mat cinched until after Devine fell and Officer Schaubert reported to the scene. Thus, Devine fails to prove that CUSCo and Amtrak possessed actual knowledge of the allegedly dangerous condition created by the cinched mat.

8

### b. Constructive Knowledge

Alternatively, under Illinois law, a plaintiff may establish constructive knowledge "by presenting evidence that the dangerous condition was present for a sufficient length of time such that in the exercise of ordinary care its presence should have been discovered, or by showing that the dangerous condition was part of a pattern of conduct or a recurring incident." *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1040 (7th Cir. 2016) (citing *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988); *Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 438 (Ill. 1958)).

Under a recurring incident theory, Devine need not establish that the alleged pattern of prior conditions was "precisely the same"; in fact, evidence of similar dangerous conditions "may be sufficient to create constructive notice." *Albert v. Bank of Am., N.A.*, No. 12 C 9785, 2016 WL 559183, at *9 (N.D. Ill. Feb. 9, 2016); *see also Culli*, 862 F.2d at 126 ("A pattern or practice of a particular type of spill is not necessary."); *Olivarius*, 695 F. Supp. 2d at 834 (given a pattern of frequent flooding, a reasonable jury could find that dangerous flooring may result and injure barefoot patrons). Nonetheless, "a record devoid of problems similar to the dangerous condition alleged precludes this method of constructive notice." *Olivarius*, 695 F. Supp at 834 (internal citations omitted).

The record fails to show that mat cinching constitutes a recurring incident. For instance, Juarez, a Union Station janitor for 16 years at the time of the incident, never heard of the Adams Street mat previously cinch. [50-10] at 8. Similarly, neither Officer Schabert nor Scrub employee Welton Morris had knowledge of prior

9

incidents from a cinched mat at the Adams Street exit. [50-9] at 14; [50-11] at 3, 22. Devine appears to concede this point, focusing her arguments not upon proving "recurring conduct" but upon the "length of time" to establish constructive knowledge. [78] at 4–5.

To establish constructive knowledge under a "length of time" theory, Devine must show that "the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). No bright-line rule exists to determine how long a dangerous condition must persist on the premises for constructive knowledge of the condition to arise, *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001), but "periods in excess of ten minutes have failed the test," *Zuppardi*, 770 F.3d at 651–52 (quoting *Reid v. Kohl's Dept. Stores, Inc.*, 545 F.3d 479, 482 (7th Cir. 2008)); *Darmo v. Target Corp.*, No. 14-CV-4827, 2016 WL 5871486, at *3 (N.D. Ill. Oct. 7, 2016) (the fact that a spill stayed on the floor for more than ten minutes did not, by itself, raise a triable issue of fact).

In examining constructive knowledge, courts must also evaluate "the specific circumstances" of the case and "conditions" of the premises "at the time of the fall." *Reid*, 545 F.3d at 483. When customer traffic is heavy, for example, defendants must provide "frequent and careful patrolling." *Id.* (citing *Peterson*, 241 F.3d at 604–05). Yet Illinois law does not require "continuous monitoring and patrolling" of safety conditions. *Zuppardi*, 770 F.3d at 652; *see also Howard v. Wal-Mart Stores, Inc.*, 160

10

F.3d 358, 359 (7th Cir. 1998) (store owner "not required to patrol the aisles continuously, but only at reasonable intervals").

Here, the mat slightly raised at 8:15 a.m. and remained in this position for nine minutes. [50] ¶¶ 15, 16. It then raised more significantly, remaining that way for two additional minutes until Devine fell at 8:26 a.m. *Id.* ¶ 17. Although other commuters fortunately avoided the more minor cinching, the mat presented a potential tripping hazard for eleven minutes in total. That the mat remained cinched for eleven minutes might not, by itself, create an issue of material fact on the issue of constructive knowledge. *Reid*, 545 F.3d at 483 (ten minutes constituted an insufficient amount of time to provide a department store with constructive notice of a spilled beverage); *Hresil v. Sears, Roebuck & Co.*, 403 N.E.2d 678, 680 (Ill. App. Ct. 1980) (ten minutes insufficient establish constructive notice). Nonetheless, hundreds of commuters passed through the far-right door of the Adams Street exit in the minutes before Devine's fall. [50] ¶¶ 15–16. While Illinois law does not require constant patrolling, *Zuppardi*, 770 F.3d at 652, it does require "frequent and careful patrolling" where, as here, the record shows the existence of heavy customer traffic, *Reid*, 545 F.3d at 483. Accordingly, considering that the mat cinched for over ten minutes and the presence of substantial traffic flow during rush hour, the record contains a triable issue of fact as to whether Amtrak and CUSCo should have discovered the mat's condition prior to her fall, thus precluding summary judgment on the issue of constructive knowledge.

11

### c. Open and Obvious

Amtrak and CUSCo next argue that Plaintiff's premises liability theory fails because the mat's condition constituted an open and obvious condition. [49] at 9–13. Under Illinois law, a landowner possesses no duty to "foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Bruns v. City of Centralia*, 21 N.E.3d 684, 689 (Ill. 2014); *Rexroad v. City of Springfield*, 796 N.E.2d 1040, 1046 (Ill. 2003); *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018).

An open and obvious condition does not depend upon a plaintiff's subjective knowledge, but instead upon the objective knowledge of a reasonable person in the same situation. *Racky v. Belfor USA Grp., Inc.*, 83 N.E.3d 440, 467 (Ill. App. Ct. 2017). If no dispute exists as to the condition's physical nature, the question of whether a condition is "open and obvious" becomes a question of law. *Dunn*, 880 F.3d at 906 (quoting *Bruns*, 21 N.E.3d at 690).

If, however, the record contains conflicting evidence of the condition's nature (such as it visibility), a fact question might arise. *Wilfong v. L.J. Dodd Const.*, 930 N.E.2d 511, 520 (Ill. App. Ct. 2010); *Buchaklian v. Lake Cty. Family Young Men's Christian Ass'n*, 732 N.E.2d 596, 601 (Ill. App. Ct. 2000). In *Buchaklian*, the plaintiff tripped on a raised mat at the YMCA after swimming and subsequently sued the YMCA for negligence. 732 N.E.2d at 598. The trial court granted summary judgment finding that the raised mat constituted an open and obvious condition, but the Illinois appellate court reversed. On appeal, the court reasoned that the law does not require invitees "to look constantly downward" because pedestrians may need to watch for

12

others to avoid collision and thus cannot simultaneously glance down to scan for dangerous conditions beneath them. *Id.* at 601. The court also noted the mat's condition might have been "difficult to discover" because of its size, the lack of significant color contrast between the defect and surrounding mat, or the short time that a person has to discover the defect as she steps toward it. *Id.*

*Buckhalian* governs here and precludes summary judgment on the issue of whether the cinched mat constituted an open and obvious condition. Devine testified that she did not see the mat's condition before she fell; she also testified that the gentleman walking two or three feet in front of her obstructed her view of the mat. [80-1] at 5–6. Additionally, given the short time available to Devine to discover the cinched mat walking toward the crowded exit at a rush hour pace, the record supports a reasonable inference that the mat's condition did not appear immediately visible. *See Buchaklian*, 732 N.E.2d at 601; *see also, e.g.*, *Hamilton v. Target Corp.*, No. 11 C 6878, 2013 WL 6050441, at *3 (N.D. Ill. Nov. 15, 2013) ("where plaintiffs have failed to notice a condition prior to slipping or tripping, courts have consistently found the open and obvious issue to be a question of fact" ).

In sum, because there remain genuine issues of material fact as to whether Amtrak and CUSCo possessed constructive knowledge and whether the mat's condition constituted an open and obvious condition, this Court denies their motion for summary judgment on Plaintiff's premises liability theory.

13

## 2. Negligence

Amtrak and CUSCo also move for summary judgment on Plaintiff's ordinary negligence theory. [49] at 7–9. As distinguished from traditional premises liability, "a different analysis for assessing the scope of a landowner's liability applies when a substance has been placed on the premises by a landowner." *Wind v. Hy-Vee Food Stores, Inc.*, 650 N.E.2d 258, 262 (Ill. App. Ct. 1995). Regardless of actual or constructive knowledge, defendants may breach their duty of reasonable care when the dangerous substance on the premises arises through their own negligence. *Reed v. Wal-Mart Stores, Inc.*, 700 N.E.2d 212, 214 (Ill. App. Ct. 1998) (a "plaintiff does not need to prove actual or constructive notice when she can show the substance was placed on the premises through the defendant's negligence"); *see also Barrios v. Fashion Gallery, Inc.*, 255 F. Supp. 3d 728, 731 (N.D. Ill. 2017).

In the context of slip and falls, a plaintiff can establish negligence "if he can show that those mats are defective or negligently installed." *Caburnay v. Norwegian Am. Hosp.*, 963 N.E.2d 1021, 1032 (Ill. App. Ct. 2011); *Little v. Wal-Mart Stores, Inc.*, No. 09 C 598, 2011 WL 248557, at *5 (N.D. Ill. Jan. 25, 2011) (premises owner may be "liable for negligent acts and omissions related to installing and maintaining floor mats") (citation omitted). In *Caburnay*, for example, the court denied summary judgment to the defendants when the mat in question repeatedly buckled and workers even suggested taping the mat down, but the defendants left it unsecured. 963 N.E.2d 1021, 1032 (Ill. App. Ct. 2011). In *Wind*, the court reversed a jury verdict for a store where an individual tripped on the edge of a store mat and the evidence

14

indicated that the mats were ordinarily taped to the floor but left unsecured the day of the accident. 650 N.E.2d at 263–64.

Unlike *Caburnay*, the record contains no evidence that the Adams Street mat buckled and curled up even once prior to Devine's fall, let alone "all the time." 963 N.E.2d at 1032. Further, unlike *Wind*, nothing in the record shows that the Adams Street mat was ordinarily taped to the floor but left unsecured the day of Devine's fall.[3] Absent evidence that Amtrak and CUSCo installed a defective mat or acted negligently in installing the mat, Devine's claim here fails. *See Gentry v. Shop 'n Save Warehouse Foods, Inc.*, 708 F. Supp. 2d 733, 739 (C.D. Ill. 2010) (because "the use of ordinary floor mats is reasonable" a plaintiff cannot prevail by "merely showing that she tripped on the mat"); *Porges v. Wal-Mart Stores, Inc.*, No. 09 C 3705, 2011 WL 939922, at *9 (N.D. Ill. Mar. 15, 2011) (mere evidence that the plaintiff tripped on the mat, without more, does not support a negligence claim). Accordingly, this Court grants summary judgment to Amtrak and CUSCo on Devine's ordinary negligence theory.

### B. Scrub and TFM

Scrub and TFM both separately move for summary judgment, primarily arguing that Devine fails to establish they owed her a duty. [62] at 11–12; [54] at 2–3. Devine contends the terms of the Agreement between CBRE, Scrub, and TFM created a duty to ensure the safety of Union Station. [76] at 4; [80] at 2–3.

---

[3] Devine tries to overcome summary judgment by challenging the mat's quality, and points to Delgado's deposition testimony, where he speculates, by looking at a picture, that the mat "look[s] kind of beat up." [78-3] at 22. Devine's counsel, however, also acknowledges on the record that the picture does not depict the mat's condition the day of the incident, as it was not taken that day. [78-3] at 21.

15

Under Illinois law, where, as here, a plaintiff alleges negligence based upon a failure to perform an act required by contract, the contract informs the existence and parameters of the defendant's duty. *St. Paul Mercury Ins. v. Aargus Sec. Sys., Inc.*, 2 N.E.3d 458, 478 (Ill. App. Ct. 2013); *Haley v. United Airlines Inc.*, No. 14 C 2614, 2015 WL 5139638, at *2 (N.D. Ill. Aug. 31, 2015). A defendant's duty thus does not expand beyond the scope of the contract. *Aargus Sec.*, 2 N.E.3d at 478; *Kotarba v. Jamrozik*, 669 N.E.2d 1185, 1188 (Ill. App. Ct. 1996). Although Devine is not a party to the Agreement, the lack of privity between Devine and Defendants does not preclude the "imposition of a legal duty upon" the Defendants. *Kotarba*, 669 N.E.2d at 1188; *see also Codan Forsikring A/S v. ConGlobal Indus., Inc.*, 315 F. Supp. 3d 1085, 1095 n.8 (N.D. Ill. 2018) ("a contracting party owes a duty of care to third parties that may foreseeably be injured by the contracting party's breach").

TFM and Scrub contracted with CBRE to maintain the area in a "cost effective, efficient, and safe manner" and further agreed to provide "all janitorial and appearance care services of the Chicago Union Station." [50-5] at 16. Both parties also agreed to "take all reasonable and prudent precautions to prevent any damage to property, personal injury, or death to persons [from any] equipment, tools, scaffolding, materials, or other property or from the acts of [Scrub and TFM]." *Id.* at 3. The Agreement also required Scrub and TFM to use "special care and planning" to keep the area "clean and maintained at all times," and to maintain "development of cleaning quality standards, methods, procedures, schedules and practices" to ensure "safe, consistent work practices and quality." *Id.* at 16.

16

Devine contends that both Scrub and TFM assumed contractual duties to generally ensure the "safety of the building," [76] at 4; [80] at 3, relying heavily upon the provision generally requiring Scrub and TFM to "take all reasonable and prudent precautions to prevent any damage to property, personal injury or death to persons [from any] equipment, tools, scaffolding, materials, or other property or from the acts of [Scrub and TFM]." [50-5] at 3. Based upon the record, this plain language gives rise to a duty of care requiring Scrub and TFM to take reasonable steps to prevent injury stemming from, among other things, acts they take—including any cleaning or maintenance they undertake concerning the mat and its surrounding areas. This Court thus denies Scrub's and TFM's motions to the extent they argue a lack of duty.

TFM also argues that it followed instructions and used ordinary care in the furtherance of its job. [54] at 6–7. Similarly, Scrub argues that it possessed no "control" or "authority" over the mats. [97] at 4–5. The crux of both Defendants' arguments here is that they only followed CBRE's instructions in performing their duties, and thus they could not have breached any duty to exercise "reasonable and prudent" precautions as set forth in their contract. And to be sure, the record contains some support for this line of reasoning: Scrub manager Delgado testified that TFM janitors possessed no authority to lift or look underneath mats, [76-3] at 25, and TFM employee Juarez testified that if something was wrong with a mat, TFM "isn't supposed fix it," [50-10] at 12. Likewise, the record indicates that Scrub employees possessed no authority to decide whether to tape the Adams Street mat down, [76-3] at 25; this decision rested solely with CBRE, *id.* at 13.

17

But other evidence in the record shows that no one—including Scrub and TFM employees—needed permission from CBRE to straighten out a mat, [50-11] at 14, and that anyone "on the floor at any time," including Scrub and TFM employees, bore responsibility to fix any "potential hazard," such as fixing a buckling mat, [50-7] at 22. This countervailing evidence indicates that both Defendants possessed at least a modicum of control and discretion concerning the movement of mats, particularly when it comes to fixing a hazard. In light of this record, triable issues of material fact exist as to whether these Defendants breached their contractually-defined duty to take "reasonable and prudent precautions to prevent" injuries to others. [50-5] at 16.

Finally, both TFM and Scrub invoke the open and obvious doctrine, arguing that it serves as an exception to finding a duty of care. [54] at 5–6. But as discussed above, genuine issues of material fact exist as to whether the cinched mat presented an open and obvious condition.

For all of the above reasons, this Court denies summary judgment to Scrub and TFM.

## IV. Conclusion

For the reasons stated above, this Court denies Scrub's and TFM's motions for summary judgment, [62]; [52], and grants in part and denies in part Amtrak and CUSCo's motion for summary judgment, [48]. Counts III and IV stand and Counts I and II stand only as to Devine's premises liability theory against Amtrak and CUSCo.

Dated: September 17, 2020

                                  Entered:

                                  John Robert Blakey
                                  United States District Judge